UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
United States


                 v.                        MEMORANDUM & ORDER
                                           09-cr-493 (KAM)

Sauri Morel,

          Defendant.

-----------------------------------X

**MATSUMOTO**, United States District Judge:

          Defendant Sauri Morel ("defendant" or "Morel") is

charged with knowingly and intentionally importing into the

United States five kilograms or more of a substance containing

cocaine, and knowingly and intentionally attempting to

distribute and possess with intent to distribute five kilograms

or more of a substance containing cocaine, in violation of Title

21 U.S.C. Sections 952(a), 960(a)(1), 960(b)(1)(B)(ii),

841(a)(1), 846, and 841(b)(1)(A)(ii)(II) and Title 18 U.S.C.

Sections 2 and 3551 *et seq.* (*See* ECF No. 7, Indictment

("Ind't").)  The government filed a motion *in limine* seeking to

preclude the defense from presenting at trial (1) the court's

findings and decision on defendant's motion to suppress, as set

forth in a Memorandum & Order dated June 18, 2010 (*see* ECF No.

40, Order Granting in Part and Denying in Part Mot. to Suppress

("Suppression Order")), and (2) the government's initial

declination of prosecution of the defendant and declinations of prosecution of four other individuals, one of whom was arrested with the defendant, and three of whom were also arrested at the John F. Kennedy International Airport ("JFK") on the same day as the defendant. (*See* ECF No. 48, Gov. Mot. in Limine ("Gov. Mot.") at 1.) As discussed herein, the parties made the following submissions in connection with the government's motion, all of which have been considered by the court. The government filed the motion *in limine* now before the court on July 9, 2010. (*See* Gov. Mot.) Thereafter, defendant filed a response in opposition on August 16, 2010 (*see* ECF No. 60, Def. Resp. in Opp'n to Mot. in Limine ("Def. Resp.")), and the government replied on August 20, 2010 (*see* ECF No. 62, Gov. Reply to Def. Resp. to Mot. in Limine ("Gov. Reply")). During a pretrial conference held on August 24, 2010, the court gave the parties an opportunity to file additional submissions regarding the pending motion. (*See* ECF Minute Entry dated 8/25/10.) Defendant then filed a supplemental response letter on September 20, 2010, stating his current position on the motion. (*See* ECF No. 65, Def. Supplemental Resp. to Mot. in Limine ("Def. Supp. Resp.").) The government filed a final response on September 27, 2010. (*See* ECF No. 67, Gov. Supplemental Reply to Def. Resp. to Motion in Limine ("Gov. Supp. Reply").)

Morel initially opposed the government's motion in its entirety, arguing that preclusion of the evidence "[would] deprive [him] of his opportunity to present a defense." (Def. Resp. at 1.) After the August 24, 2010 pretrial conference, during which the parties clarified their positions, the court permitted Morel to submit a supplemental response to the government's motion *in limine*. (*See* ECF Minute Entry dated 8/25/10.) In his supplemental submission dated September 20, 2010, the defense modified its position. (Def. Supp. Resp. at 1.) The defense still opposes the government's motion *in limine* with respect to the declinations of prosecution, arguing that the declinations form part of the circumstances surrounding Morel's interrogation and show that the agents had a motive to fabricate or exaggerate the evidence against Morel. (*See id.* at 1-2, 4-5.) However, the modified defense position regarding the suppressed statement is that Morel "does not anticipate offering into evidence the suppressed statement, the Court's ruling, or the facts surrounding the continued interrogation of Mr. Morel after he invoked his right to counsel." (*Id.* at 1.) Instead, the defense argues that it is entitled to attack the credibility of government witnesses regarding defendant's admissible statements by presenting evidence of the circumstances under which Morel made the admissible statements. (*See id.* at 2-3.)

The court, therefore, construes defendant's September 20, 2010 supplemental submission as a withdrawal of the defendant's previous opposition to the government's motion to preclude evidence of the Suppression Order, and further construes defendant's submission as a defense motion *in limine* to present evidence of the circumstances surrounding the taking of defendant's admissible statements. Based on the defense's representation that it does not anticipate offering into the evidence defendant's suppressed statements, the Suppression Order, or the circumstances surrounding the continued interrogation of Morel after he invoked his right to counsel (*see id.* at 1), the court grants the government's motion *in limine* to preclude this evidence from trial.

The remaining issues for decision regarding the parties' motions *in limine* are whether (1) the defense may present evidence of the circumstances surrounding defendant's admissible statements, and (2) the defendant is precluded from offering or otherwise referencing the initial declination of prosecution of Morel and the declinations of prosecution of the other four individuals arrested at JFK on the same day as the defendant in connection with the cocaine shipments. For the reasons that follow, the court finds that the defendant may attack the credibility of the government witnesses regarding defendant's admissible statements by presenting evidence of the

circumstances surrounding the taking of such statements. The defense is also entitled to reference the fact that Morel is the only individual facing prosecution for the instant offense among the four other individuals arrested at JFK on the same day as the defendant in connection with the cocaine shipments. However, the defense is precluded from referring to any declination of prosecution, including the initial declination of prosecution of Morel.

## BACKGROUND

According to the Complaint, Indictment, and other government submissions, the instant charges stem from events which occurred at JFK on June 21, 2009 ("June 21, 2009 events") and thereafter. (*See generally* Ind't; ECF No. 1, Complaint ("Compl."); Gov. Mot. at 1-2.) Customs and Border Protection agents at JFK seized two shipments arriving from the Dominican Republic on an American Airlines flight and containing over 300 kilograms of cocaine hidden among breadfruit. (*See* Gov. Mot. at 1; *see also* Compl. at 2.) Immigration and Customs Enforcement agents thereafter set up surveillance at the American Airlines warehouse at JFK. (*See id.*) Morel and another individual, Henry Acosta, arrived at JFK later that day to pick up one of the shipments from the American Airlines warehouse and began loading the shipment into a van. (*See* Gov. Mot. at 1-2; *see also* Compl. at 2-3.) Morel and Acosta were arrested. (*See* Gov.

Mot. at 2; *see also* Compl. at 3.)  Three other individuals were also arrested that day after they attempted to claim the second shipment from the American Airlines warehouse.  (*See* Gov. Mot. at 2, 5.)  According to the government, Henry Acosta and the three other arrested individuals (collectively "co-arrestees") were interviewed, and all denied knowing that the shipments contained narcotics.  (*See id.*)  The government declined to prosecute the co-arrestees and they were released.  (*See id.*)

The government asserts that, after his arrest, Morel was twice advised of his *Miranda* rights, which he waived, and consented to a search of his cell phones.  (*See* Compl. at 3; Gov. Mot. at 2.)  Morel at first denied any knowledge that the shipments contained narcotics, and thus the government initially declined to prosecute him.  (*See* Gov. Mot. at 2.)  However, the government claims that Morel subsequently confessed to knowing that the packages contained narcotics.  (*See* Compl. at 3; Gov. Mot. at 2.)  The government deferred prosecution and released Morel later that night based on his alleged stated willingness to cooperate with agents.  (*See* Gov. Mot. at 2.)  Two days later, on June 23, 2009, Morel attended a meeting with agents during which he purportedly recanted his previous confession. (*See id.*)  The government then proceeded with Morel's prosecution, and Morel was indicted in July 2009.  (*See* Ind't.)

The defense filed a motion on March 19, 2010 to suppress (1) Morel's post-arrest statements on the grounds that they were elicited in violation of his constitutional rights; and (2) any fruits of the searches of his cell phones on the grounds that his consent to the search was not freely and voluntarily made. (*See* ECF No. 23, Mot. to Suppress Statements and Cell Phone Evidence Seized; ECF No. 23-1, Mem. of Law in Supp. of Mot. to Suppress; ECF No. 27, Def. Affirmation in Supp. of Mot. to Suppress.) The court held a Suppression Hearing on April 19 and 22, 2010 (*see* ECF Minute Entries dated 4/19/10 and 4/22/10), and received post-hearing submissions from the parties (*see* ECF No. 34, Def. Post-Hearing Ltr.; ECF No. 38, Gov. Post-Hearing Ltr.).

By an Order dated June 18, 2010, the court granted in part and denied in part defendant's motion to suppress. (*See* Suppression Order.) Specifically, the court suppressed Morel's admission on June 21, 2009, after Morel received *Miranda* warnings and then invoked his right to counsel, that he knew that the shipment in question contained narcotics. (*See id.*) The court found that agents continued to question Morel without an attorney present after Morel requested counsel, in violation of his Fifth Amendment right, and thus suppressed the alleged confession. (*See id.*) The court denied the motion to suppress the remaining post-arrest statements and evidence, finding that

(1) any post-arrest statements made prior to the invocation of counsel on June 21, 2009 were made after Morel knowingly and voluntarily waived his *Miranda* rights; (2) the evidence from the search of Morel's cell phones was obtained pursuant to Morel's voluntary consent to the searches on June 21, 2009; and (3) any post-arrest statements made on June 23, 2009 occurred while Morel was not in custody. (*See id.*) The admissible post-arrest statements include Morel's alleged admission that he was paid $5,000 to pick up the shipment from JFK. (*See id.*)

The court now considers the parties' motions *in limine*.

## DISCUSSION

I. **Motions** *In Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (explaining that the motion *in limine* is used to "to exclude anticipated prejudicial evidence before the evidence is actually offered"); *see also Palmieri v. Defaria et al.*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the

trial." (citation and internal quotation marks omitted)); *Nat'l.*
*Union Fire Ins. Co. v. L.E. Myers Co. Group et al.*, 937 F. Supp.
276, 283 (S.D.N.Y. 1996) (same).  Evidence should be excluded on
a motion *in limine* only when the evidence is clearly
inadmissible on all potential grounds.  *See Baxter Diagnostics,*
*Inc. v. Novatek Med., Inc.*, No. 94-cv-5220, 1998 WL 665138, at
*3 (S.D.N.Y. Sept. 25, 1998); *Nat'l Union Fire Ins. Co.*, 937 F.
Supp. at 287.  Courts considering a motion *in limine* may reserve
judgment until trial so that the motion is placed in the
appropriate factual context.  *See Nat'l. Union Fire Ins. Co.*,
937 F. Supp. at 287.  Alternatively, a district judge is "free,
in the exercise of sound judicial discretion, to alter a
previous *in limine* ruling" at trial as "the case unfolds,
particularly if the actual testimony differs from what was
contained in the [movant's] proffer."  *Luce*, 469 U.S. at 41-42.

## II. Circumstances Surrounding the Taking of Morel's Admissible Post-Arrest Statements

        The defense moves to introduce evidence of the
circumstances surrounding the taking of the admissible post-
arrest statements made by Morel.  (*See* Def. Supp. Resp. at 2-3.)
The defense argues that, as part of Morel's right to present a
defense, he is entitled to introduce facts that bear on the
weight and credibility of testimony regarding his admissible
statements.  (*See id.*)  Thus, even though the court denied

Morel's motion to suppress some of his alleged statements after finding that they were made after a voluntary and knowing waiver of his *Miranda* rights and before he invoked his right to counsel, Morel argues that he is still entitled to challenge their weight and credibility at trial. (*See id.*)

The government, in its September 27, 2010 supplemental submission, did not address this argument. (*See* Gov. Supp. Reply at 1-2.) The government instead presented arguments in support of its original motion, i.e. that the defense should be precluded from introducing into evidence the suppressed confession and the circumstances under which that alleged confession was obtained. (*See id.*)[1] Despite the government's failure to address defendant's modified position, the court considers the question of the admissibility of the circumstances surrounding the admissible statements by Morel. For the reasons that follow, defendant's motion *in limine*, to the extent that defendant's September 20, 2010 supplemental submission has been interpreted as such, is granted to the extent set forth herein.

"Whether rooted in the Due Process Clause of the Fifth Amendment or in the Compulsory Process Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the

---

[1] As explained on page 3, *supra*, because defendant stated that he does not intend to present evidence of the suppressed confession, the Suppression Order, or the circumstances surrounding the taking of the suppressed confession (*see* Def. Supp. Resp. at 1), the court granted the government's motion *in limine* to preclude this evidence.

right to present a defense." *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (citation and internal quotation marks omitted)). The Supreme Court has held that "an essential component of procedural fairness is an opportunity to be heard," and that this right "would be an empty one if the [court] were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." *Crane*, 476 U.S. at 690. This is so even if the trial court has previously determined, based on that same evidence, that the defendant's confession was admissible because it was neither involuntary nor coerced. *See id*. at 689. The Supreme Court explained that "the circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual." *Id*. at 688. The trial court relies on this evidence to determine the purely legal question of voluntariness. *Id*. But "evidence about the manner in which a confession was secured will often be germane to its probative weight, a matter that is exclusively for the jury to assess." *Id*. Thus, "the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's

*reliability* during the course of the trial." *Id.* (emphasis in original).

Relying on the reasoning in *Crane* and the procedures set forth in Title 18 U.S.C. Section 3501(a),[2] Morel argues that he is entitled to present evidence of the circumstances surrounding the taking of his admissible statements, but not the suppressed statements. (*See* Def. Supp. Resp. at 2-3.) The court agrees that Morel may present specific evidence regarding the circumstances under which he made admissible post-arrest statements. Regardless of any findings in the Suppression Order concerning the voluntariness of Morel's alleged statements or relating to the credibility or trustworthiness of the facts presented at the Suppression Hearing, Morel has the right to have a jury determine, based on its own assessment of the evidence, the probative weight of any admitted statements.

"Confessions, even those that have been found to be voluntary, are not conclusive of guilt." *Crane*, 476 U.S. at 689. Defendants can challenge the probative weight of admitted confessions by showing that they are "'insufficiently corroborated or otherwise . . . unworthy of belief.'" *Id.* at

_____

[2] Section 3501(a) of Title 18 provides, in relevant part, that "[i]f the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a).

689 (quoting *Lego v. Twomey*, 404 U.S. 477, 485-86 (1972))
(ellipsis in original). That is what Morel seeks to do in this
case. Specifically, Morel argues that he should be permitted to
show that any testimony regarding his admissible post-arrest
statements is a fabrication or exaggeration of his true
statements. (*See* Def. Resp. at 2-3; Def. Supp. Resp. at 4-5.)
To support this defense, Morel argues that he "must provide the
jury with an explanation for what may have motivated the agents
to fabricate, exaggerate, or embellish" the evidence. (*See* Def.
Resp. at 2.) According to Morel, the circumstances surrounding
the taking of the admissible post-arrest statements in part
provide that explanation. (*See id.* at 2-3; *see also* Def. Supp.
Resp. at 2, 4-5.) Morel argues that precluding him from
presenting that evidence would leave him without an opportunity
to present this defense to the jury. As the Supreme Court
explained in *Crane*, "stripped of the power to describe to the
jury the circumstances that prompted his confession, the
defendant is effectively disabled from answering the one
question every rational juror needs answered: If the defendant
is innocent, why did he previously admit his guilt?" *Crane*, 476
U.S. at 689. Without the ability to present evidence regarding
the circumstances under which his admissible statements were
made and thereby attack the credibility of the agents who are
likely to testify about those statements, Morel would be denied

13

his right to have a meaningful opportunity to present a *complete* defense. *See id.* at 690 (finding that "the blanket exclusion of the proffered testimony about the circumstances of [the defendant's] confession deprived him of a fair trial").

Because Morel's constitutional right to present a defense in this case includes the right to challenge the probative weight of admitted statements, Morel may present specific evidence of the circumstances surrounding the taking of those statements. This includes, for example, evidence of the duration of Morel's detention and interrogation at the time he made the admissible post-arrest statements on June 21, 2009, whether Morel was provided with water and food as of the time of his admissible statements, and the number of agents present in the room while Morel was interrogated. Therefore, to the extent that the court has interpreted Morel's September 20, 2010 supplemental submission to be a defense motion *in limine*, defendant's motion as to this evidence is granted.

## III. Declinations of Prosecution

The government moves to preclude defendant from referencing at trial that the government (1) initially declined to prosecute Morel, and (2) declined to prosecute four other individuals arrested at JFK on that day in connection with the cocaine shipments. (*See* Gov. Mot. at 1.) The government argues that because the court suppressed the statement in which Morel,

unlike the other four individuals, allegedly confessed to knowing that the shipment contained narcotics, "the jury will be left to speculate that the government and the agents singled the defendant out for prosecution for some improper reason." (*Id.* at 5.) Further, the government argues that allowing the defense to reference the declinations will improperly influence the fact-finding duties of the jury in that the jury is likely to place undue weight on the declinations and neglect their duties by deferring to the government's assessment of the strength of the case against Morel or draw improper conclusions about the guilt of the individuals involved, including Morel. (*See id.* at 5-6; Gov. Reply at 2-3; Gov. Supp. Reply at 2.) The government further argues that evidence of the declinations of the co-arrestees is irrelevant and likely to confuse and distract the jury, and is therefore inadmissible pursuant to Rule 403 of the Federal Rules of Evidence. (*See* Gov. Reply at 3; Gov. Supp. Reply at 2.)

Morel opposes the government's *in limine* motion, arguing that the declinations of prosecution "form part of the background and circumstances that attend the taking of [Morel's] confession, including facts bearing upon its weight and voluntariness." (Def. Supp. Resp. at 4 (citation and internal quotation marks omitted) (brackets in original).) Specifically, the defense suggests that the declinations are relevant to

showing that the agents had a motive to fabricate or exaggerate any statements made by Morel. (*See* Def. Resp. at 2-3; Def. Supp. Resp. at 4-5.) According to the defense,

> Having spent at least all day finding, investigating, arresting and interrogating in connection with the seized shipments, and having no one that the U.S. Attorney's Office was willing to prosecute, the pressure on the agents to either falsely assert that Mr. Morel made an incriminating statement or to pressure him improperly to make an incriminating statement was enormous.

(Def. Resp. at 2.) The defense concedes that the declinations of prosecution are not relevant to the question of the innocence or guilt of Morel or the co-arrestees. (*See* Def. Resp. at 3; Def. Supp. Resp. at 4.) In fact, the defense invites a judicial instruction limiting the consideration of this evidence by the jury. (*See id.*) However, the defense insists that without admission of the declinations it will be unable to adequately support and argue to the jury the agents' motivation for fabricating or exaggerating evidence against Morel. (*See* Def. Resp. at 2-3; Def. Supp. Resp. at 4-5.)

Because the evidence of the initial declination of prosecution of Morel raises different questions than the evidence of the declinations of prosecution of the co-arrestees, the court will address each separately.

*A.   Initial Declination of Prosecution of Morel*

The government moves to preclude Morel from presenting evidence of the initial decision to decline to prosecute him after his arrest on June 21, 2009.  The relevant facts and arguments have been outlined above, and will not be restated. The court agrees with the government that allowing the defense to reference the initial declination of prosecution of Morel, without allowing the government to introduce evidence, specifically Morel's suppressed confession, that led to the government's subsequent decision to prosecute Morel, creates a substantial risk of confusing and misleading the jury.

As discussed above, Morel's stated defense strategy is to convince the jury that the agents had a motive to fabricate or exaggerate his admissible statements and hold him responsible for the June 21, 2009 events.  (*See* Def. Resp. at 2-3; Def. Supp. Resp. at 4-5.)  Morel maintains his innocence and denies making the statement that he was paid $5,000 to pick up the shipment in question at JFK.  (*See id.*)  According to defendant, without evidence of the purported reason that the agents would fabricate, embellish or exaggerate the facts in this case, the defense will be left arguing to the jury that the evidence presented by the agents is the result of some unexplained conspiracy against Morel.  The explanation to support the defense theory, according to Morel, lies in part on the initial

declination of prosecution providing the agents with a motive to fabricate, embellish and exaggerate. (*See id.*) Thus, the initial declination is important evidence to support the defense theory.

Recognizing that a criminal defendant must be afforded a meaningful opportunity to present a complete defense, *see Blum*, 62 F.3d at 67, the court is inclined to agree with Morel that the initial declination of prosecution is relevant to showing that the agents are fabricating or exaggerating the evidence in this case. Relevance, however, is not the only consideration for the court when evaluating the admissibility of evidence. Under Rule 403 of the Federal Rules of Evidence,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. In this case, allowing Morel to present evidence that the government initially declined his prosecution presents a substantial risk of confusing and misleading the jury. *See United States v. Brown et al.*, No. 07-cr-874, 2009 WL 497606, at *7 (E.D.N.Y. Feb. 26, 2009) (stating that presenting evidence of a prior decision not to prosecute a particular defendant "risks confusing and misleading the jury"); *United States v. Paloscio*, No. 99-cr-1199, 2003 WL 21910875, at *1

(S.D.N.Y. Aug. 11, 2003) (finding risk of confusing the jury if evidence of a *nolle prosequi* is presented at trial). "There are many factors that influence the government's decision not to prosecute a defendant on certain charges . . . ." *United States v. Delgado et al.*, 903 F.2d 1495, 1499 (11th Cir. 1990); *see also United States v. Sua et al.*, 307 F.3d 1150, 1153 (9th Cir. 2002) (following holding in *Delgado*). In addition to confusing and misleading the jury, if evidence of a declination of prosecution is introduced, the government will likely need to take the stand to explain the declination to the jury, which might result in unnecessary testimony and undue delay. *See Delgado*, 903 F.2d at 1499. Further, permitting evidence of a declination will require a "fairly elaborate instruction to the jury . . . on why it could not be considered as bearing on [the] guilt" of the defendant or other individuals involved. *Paloscio*, 2003 WL 21910875, at *1.

The evidence of the initial declination in this case not only risks confusing the jury, but could also be misleading. According to the government, after it initially declined to prosecute Morel, agents conducted subsequent interviews and obtained an alleged confession from Morel that he knew that the shipment he was picking up contained narcotics. (*See* Gov. Mot. at 2.) This alleged confession was the basis for the government's change in course and the prosecution of Morel.

19

(*Id.*)  The government, however, is precluded from presenting this explanation to the jury.  The court suppressed the alleged confession after finding that it was obtained in violation of Morel's Fifth Amendment right to counsel when the agents continued to interrogate Morel after he requested counsel.  (*See* Suppression Order.)

Other than impeaching the defendant, should he choose to testify in his defense, the government is precluded from introducing or referencing the alleged confession at trial.  *See Oregon v. Hass*, 420 U.S. 714, 722-24 (1975) (holding that statement obtained in violation of defendant's Fifth Amendment right to counsel was admissible to impeach a testifying defendant); *United States v. Douglas*, 525 F.3d 225, 248 (2d Cir. 2008) (stating that "statements taken from a defendant in violation of his *Miranda* rights, though they may not be introduced by the government during its case-in-chief, are nonetheless admissible to impeach statements made by the defendant in the course of his testimony").  Thus, in its case-in-chief the government will be unable to offer *any* explanation to the jury for its change in course regarding the prosecution of Morel.  The jury will be presented with incomplete facts and left to speculate as to why the government ultimately decided to prosecute Morel.  The government is correct that, without an explanation from the government, the jury could speculate "that

the government and the agents singled the defendant out for prosecution for some improper reason." (Gov. Mot. at 5.) But the jury could just as readily speculate that the government obtained additional evidence incriminating Morel and that Morel is guilty based on the government's reversal of its initial declination. To permit such incomplete evidence to be presented to the jury risks substantial prejudice to both Morel and the government and far outweighs any probative value to Morel's defense strategy.

This risk of confusing and misleading the jury would not be reduced by permitting the government to generally reference subsequently discovered evidence, without specific reference to the suppressed confession, as the basis for the reversal of the initial declination. In that instance, the jury will be left to speculate not only about why the government changed its position, but also about the nature of the additional evidence. Nor would a limiting instruction cure the risk of confusing or misleading the jury. The court in *Paloscio* declined to admit evidence of a *nolle prosequi* after finding, in part, that "reference to the *nolle* would . . . require fairly elaborate instruction to the jury" and risk confusion of the issues. *Paloscio*, 2003 WL 21910875, at *1. Allowing evidence of the initial declination of prosecution of Morel in this case would similarly require complicated and elaborate jury

instructions and risk confusing the jury.  In addition, the
court in this case would need to instruct the jury regarding the
reversal of the initial declination, further risking confusion
and prejudice and complicating any required jury instructions.
The risk of confusing the jury is even higher in this case than
it was in *Palascio* and the basis for precluding the evidence is
more compelling.

The court is mindful that in order to preclude Morel
from presenting evidence relevant to his defense, Rule 403
provides that the risk of confusing or misleading the jury must
"substantially outweigh[]" the probative value of the evidence.
Fed. R. Evid. 403.  Given the claimed importance of the evidence
to the defense theory, this risk must in fact be "overwhelming"
to satisfy the balancing test and warrant preclusion under Rule
403.  *See Blum*, 62 F.3d at 68 ("'Indeed, given the importance of
the . . . testimony to the defense, whatever confusion . . .
that may have resulted from its admission would have to have
been overwhelming to satisfy Rule 403's balancing test.'"
(quoting *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir.
1976) (ellipsis in original))).  The court finds that the risk
of confusing and misleading the jury in this case is
overwhelming and thus satisfies this stringent test.  As
discussed above, because of the complicated explanation of a
declination of prosecution, coupled with the necessarily

incomplete nature of the explanatory facts due to the suppressed statements, the risk that the jury will be misled or will confuse the issues, speculate, or draw improper inferences from the evidence is more than substantial; the risk is overwhelming.

Moreover, while evidence of the initial declination of prosecution is important to the theory of fabrication, specific reference to this evidence is not necessary to support the defense. Morel is not precluded from eliciting facts about the amount of time and effort the agents put into investigating the June 21, 2009 incidents or, as will be explained below, about the fact that Morel is the only individual facing charges arising out of that operation. Without specifically referencing the initial declination of prosecution, Morel can elicit facts showing that the agents had a motive to fabricate or exaggerate and thereby support his theory, i.e. that "[h]aving spent at least all day finding, investigating, arresting and interrogating in connection with the seized shipments" and "having no one" other than Morel to hold responsible for the over 300 kilograms of cocaine seized, "the pressure on the agents to either falsely assert that Mr. Morel made an incriminating statement or to pressure him improperly to make an incriminating statement was enormous." (Def. Resp. at 2.) The court generally cannot limit the scope and extent of cross-examination of the government agents by Morel if it would

"keep[] from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." *See United States v. Reindeau*, 947 F.2d 32, 35 (2d Cir. 1991) (citation and internal quotation marks omitted). However, the limitation is not improper "if the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." *See United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (citation and internal quotation marks omitted). *See also United States v. Millan-Colon et al.*, 836 F. Supp. 1007, 1011-14 (S.D.N.Y. 1993) (following *Reindeau* and *Roldan-Zapata* and concluding that limitation of criminal defendant's cross-examination of witness was proper when jury had sufficient facts to assess credibility). Because Morel may present enough facts to the jury to attack the credibility of the agents in this case, precluding specific reference to the initial declination of prosecution of Morel is warranted.

Because the risk of confusing and misleading the jury is so overwhelming, and the declination evidence is not necessary to support the theory of defense, the court finds that the risks in allowing the defense to reference the initial declination of prosecution of Morel substantially outweigh any probative value. Pursuant to Rule 403, the court therefore grants the government's motion *in limine* to preclude Morel from

24

referencing the fact that the government initially declined his prosecution following his arrest on June 21, 2009.

B.  *Declinations of Prosecution of Co-Arrestees*

The government also moves to preclude Morel from referencing the fact that the government declined to prosecute the co-arrestees in this case, stating, in addition to the arguments outlined above, that it did not intend to introduce evidence of the separate cocaine shipment. (*See* Gov. Reply at 3.)  The court, however, notes that the government has recently changed its position regarding its intentions to present testimony by agents regarding the co-arrestees.  In an October 26, 2010 submission, the government has reversed its position and has stated that it "inten[ds] to elicit testimony of witnesses at trial regarding the seizure of approximately 233 kilograms of [cocaine] on June 21, 2009, and the fact that four other individuals were arrested and interviewed by agents on June 21, 2009."  (ECF No. 78, Gov. Ltr. dated 10/26/10.)

For the same reasons outlined above, the court finds that the declinations of prosecution of the co-arrestees are relevant to Morel's theory of defense: with only Morel to hold responsible for the June 21, 2009 events, the agents had a motive to fabricate or embellish evidence to ensure his prosecution and conviction. (*See* Def. Resp. at 2-3; Def. Supp. Resp. at 4-5.)  Further, unlike the initial declination of

prosecution of Morel, the risk of misleading the jury with incomplete facts is not present in this instance because the evidence precluded by the Suppression Order is relevant only to explain the initial declination as to Morel and not the declinations of the co-arrestees.

Nonetheless, presenting evidence that the government declined to prosecute the co-arrestees still risks confusing the jury. The reasons are the same as those discussed above. The decision whether or not to prosecute arrestees on particular charges depends on many factors. *See Delgado*, 903 F.2d at 1499. Testimony from government witnesses explaining the reasons for the declinations in this case is likely to prompt speculation by the jury and unduly delay the trial. *See id.* In fact, the government testimony is likely to be highly prejudicial to Morel. *See id.* ("The reasons expressed by the government's counsel could be highly incriminating with regard to the defendant who is seeking to have the evidence admitted."). Referencing the government's declinations of prosecution of individuals unrelated to the instant prosecution and not appearing as witnesses against the defendant risks distracting the jury from determining the real issue for this trial: whether the jury will find beyond a reasonable doubt that Morel is guilty of the charged offenses. *See Paloscio*, 2003 WL 21910875, at *1 (finding that presenting evidence of a *nolle prosequi*

presents "danger of confusion of the issues"). Finally, allowing reference to the declinations of prosecution of the co-arrestees will require the court to give elaborate and complicated jury instructions regarding the permissible consideration of that evidence. *See id.* The risk of confusion is thus substantial. *See Brown*, 2009 WL 497606, at *7; *Delgado*, 903 F.2d at 1499; *Sua*, 307 F.3d at 1153; *Paloscio*, 2003 WL 21910875, at *1.

Finding a risk of confusion of the jury, however, is not the end of the analysis. As noted above, the evidence of the declinations of prosecution of the co-arrestees is important to Morel's defense theory of fabrication. For that reason, the risk of confusion must be "overwhelming" to warrant preclusion of the evidence under Rule 403. *Blum*, 62 F.3d at 68 (quoting *Harvey*, 547 F.2d at 723). Furthermore, as previously noted, Morel has a constitutionally protected right to have a meaningful opportunity to present a complete defense, *see Blum*, 62 F.3d at 67, and application of the Rule 403 balancing test should not unnecessarily interfere with that right.

In this case, with regard to the presentation of evidence of the declinations of prosecution of the co-arrestees, the interest in avoiding undue prejudice and the interest in protecting Morel's constitutional right to present a defense can be reconciled. Although specifically presenting evidence of the

declinations of prosecution of defendant's co-arrestees raises substantial concerns of jury confusion and undue prejudice, doing so is not necessary for the defense to present evidence from which a jury could find that the agents had a motivation to fabricate or exaggerate the evidence against Morel. Rather than presenting evidence of the declinations, the defense may instead elicit the fact that Morel is the only individual facing charges for the June 21, 2009 events, even though four others were arrested.[3] The showing of a motive to fabricate is the same whether or not the declinations are specifically referenced. Thus defendant may argue that having no one other than Morel to hold responsible for the over 300 kilograms of cocaine seized after their investigation at JFK, the agents were strongly motivated to fabricate or exaggerate evidence against Morel. Morel thus can elicit enough facts to support and argue his defense theory to the jury without risking substantial confusion of the issues. Preclusion of the evidence of the declinations of prosecutions of the co-arrestees is not improper because Morel will be able to present sufficient facts for the jury to assess the credibility of the government agents. *See Roldan-Zapata*, 916 F.2d at 806 (noting that limiting scope of cross-

---

[3] There is still some risk that presenting the fact that Morel is the only individual facing prosecution for the June 21, 2009 events might distract or confuse the jury. However, the risk of confusion is not "overwhelming" so as to warrant depriving Morel of his constitutional right to present a defense. *See Blum*, 62 F.3d at 68 (quoting *Harvey*, 547 F.2d at 723).

examination is not improper if the jury has enough facts to assess the credibility of the witnesses).

Balancing the right to present a defense against the interest in avoiding confusing the jury, the court will preclude reference to the declinations of prosecution of the co-arrestees, but will allow the defense to present evidence that Morel is the only individual facing prosecution for the June 21, 2009 events. Moreover, the court will give the jury cautioning instructions. The parties are directed to submit proposed jury instructions consistent with this Memorandum and Order by November 2, 2010.

## CONCLUSION

For the reasons set forth above: (1) The court grants the government's motion *in limine* to preclude evidence regarding Morel's suppressed statement, the Suppression Order, and the circumstances surrounding the continued interrogation of Morel after he invoked his right to counsel. (2) The court grants the defense application to introduce evidence of the circumstances surrounding the taking of any admissible post-arrest statements allegedly made by Morel. (3) The court grants the government's motion to preclude the defense from referencing the initial declination of prosecution of Morel. (4) The court grants the government's motion to preclude the defense from referencing the declinations of prosecution of the co-arrestees. However, the

defense is permitted to reference the fact that Morel is the only individual facing prosecution for the June 21, 2009 events, even though four others were arrested. The parties are directed to submit proposed jury instructions consistent with this Memorandum and Order by November 2, 2010.

**SO ORDERED.**

Dated:     October 29, 2010
           Brooklyn, New York

                                   _____/s/_____
                                   KIYO A. MATSUMOTO
                                   United States District Judge