UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA

-against-

SAURI MOREL,

                Defendant.

----------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

**MEMORANDUM & ORDER**

09-CR-493 (KAM)

**MATSUMOTO**, United States District Judge:

        Defendant Sauri Morel ("defendant" or "Morel") is charged in a July 2009 indictment with knowingly and intentionally importing into the United States five kilograms or more of a substance containing cocaine, and knowingly and intentionally attempting to distribute and possess with intent to distribute five kilograms or more of a substance containing cocaine, in violation of Title 21 U.S.C. Sections 952(a), 960(a)(1), 960(b)(1)(B)(ii), 841(a)(1), 846, and 841(b)(1)(A)(ii)(II) and Title 18 U.S.C. Sections 2 and 3551 *et seq.* (*See* ECF No. 7, Indictment ("Ind't").)  Pending before the court is Morel's motion for disclosure of further material pursuant to Title 18 U.S.C. Section 3500. (ECF No. 68, Mot. for Disclosure of Further 3500 Material ("3500 Material Mot.").)

**BACKGROUND**

According to the Complaint, Indictment, and other government submissions, the instant charges stem from events which occurred at the John F. Kennedy International Airport ("JFK") on June 21, 2009 and thereafter. (*See generally* Ind't; ECF No. 1, Compl.; ECF No. 71, Gov. Resp. in Opp'n to Mot. for Disclosure of Further 3500 Material ("Gov. Opp'n") at 1.) Customs and Border Protection agents at JFK seized two shipments arriving from the Dominican Republic on an American Airlines flight and containing over 300 kilograms of cocaine hidden among breadfruit. (*See* Gov. Opp'n at 1; *see also* Compl. at 2.) The shipments were from the same sender, but addressed to different recipients. (*See* Gov. Opp'n at 1.) The first shipment contained approximately 107 kilograms of cocaine, and the second shipment contained approximately 233 kilograms of cocaine. (*See id.*) Immigration and Customs Enforcement agents thereafter set up surveillance at the American Airlines warehouse. (*See id.*; Compl. at 2.) Morel and another individual, Henry Acosta ("Acosta"), were arrested after attempting to pick up the first shipment from the American Airlines warehouse on June 21, 2009. (*See* Gov. Opp'n at 1; *see also* Compl. at 2-3.) That same day, three other individuals were arrested after attempting to pick up the second shipment from the American Airlines warehouse. (*See* Gov. Opp'n at 1-2.) Acosta and the three other individuals

arrested were interviewed and they denied any knowledge that the shipments contained narcotics. (*See id.*) The government declined to prosecute these four individuals, and they were released. (*See id.*) The government pursued the prosecution of Morel after he allegedly confessed to government agents that he knew that the shipment he was picking up contained narcotics. (*See* Compl. at 3.) Morel was indicted in July 2009. (*See* Ind't.)

Prior to the trial scheduled to commence on August 30, 2010, the government produced to the defendant certain material pursuant to Title 18 U.S.C. Section 3500 ("3500 Material"). (ECF No. 61, Def. Ltr. dated 8/20/10 (noting the production of 3500 Material by the government).) During an August 24, 2010 pretrial conference, at the defendant's request, the court adjourned the trial to allow the defendant time to evaluate newly discovered information resulting from the review of the produced 3500 Material. (*See* ECF Minute Entry dated 8/25/10.) The court also directed the parties to meet and confer in order to determine whether the defense would request disclosure of further 3500 Material relating to the four other individuals arrested at JFK on June 21, 2009 in connection with the cocaine shipments. (*See id.*)

The defense filed the instant motion on September 29, 2010, informing the court that after conferring with the

government, it "requested the production of the 3500 Material pertaining to the non-charged arrestees . . . as relevant to the cross-examination of the Government Agents involved in the defendant's arrest." (3500 Material Mot. at 1.) The government filed a letter on October 5, 2010, opposing Morel's motion for the disclosure of further 3500 Material. (*See generally* Gov. Opp'n.) In this letter, the government argued that the material requested by the defense is "not relevant to the charges against the defendant" because Morel is "not charged with possessing or attempting to possess the narcotics contained" in the second shipment of approximately 233 kilograms of cocaine, and because the seizure of that second shipment "involved individuals other than the defendant." (*Id.* at 2.) Further, the government stated that it "does not intend to question the witnesses regarding [the seizure of the second shipment containing approximately 233 kilograms of cocaine], nor make reference to this seizure in its jury addresses." (*Id.*) However, "out of an abundance of caution," the government stated that it "does not object to an in camera review of the materials by the Court." (*Id.* at 3.)

The court adopted the government's suggestion for an *in camera* review of the 3500 Material in question, and on October 25, 2010, ordered the government to produce, *in camera*, the 3500 Material for review. (ECF Order dated 10/25/10.) The

4

court also ordered the government to submit a statement "informing the court whether it intends to elicit testimony from any government witness regarding the fact that other individuals were arrested and interviewed at JFK on June 21, 2009." (*Id.*) The following day, on October 26, 2010, the government hand delivered a letter to the court, which was filed on ECF on October 27, 2010, responding to the court's order. (ECF No. 78, Gov. Ltr. dated 10/26/10 ("10/26/10 Ltr.").) In this letter, the government, for the first time, stated "its intention to elicit testimony of witnesses at trial regarding the seizure of approximately 233 kilograms of [cocaine] on June 21, 2009, and the fact that four other individuals were arrested and interviewed by agents on June 21, 2009." (*Id.*) The government informed the court that, "[i]n light of this, the government will turn over 3500 Material relating to this seizure, and therefore no in-camera review is needed." (*Id.*) The government's October 26, 2010 letter did not indicate that any 3500 Material would be withheld for *in camera* review.

On October 27, 2010, relying on the government's letter from the previous day, the court terminated as moot Morel's motion for the disclosure of this 3500 Material. (*See* ECF Order dated 10/27/10.) Later that day, however, after the court had terminated Morel's motion, the government filed a supplemental letter. (ECF No. 79, Gov. Ltr. dated 10/27/10

("10/27/10 Ltr.").) Despite previously stating that it "will turn over 3500 Material . . . and therefore no in-camera review is needed" (10/26/10 Ltr.), the government now maintains that it "intends to turn over to the defense certain documents relating to a separate and unrelated seizure of approximately 233 kilograms of cocaine that also arrived on June 21, 2009" but that "the government requests an *in camera* review of certain other documents that the government believes are not discoverable." (10/27/10 Ltr.) The government then hand delivered to the court an additional *ex parte* letter, along with the 3500 Material in question, for an *in camera* review.

After reviewing the parties' submissions, including the 3500 Material *in camera*, the court finds that the documents sought to be withheld by the government should be produced as 3500 Material. The government is therefore directed to turn over the material to the defense as required under Title 18 U.S.C. Section 3500 by the close of business on November 2, 2010.

## DISCUSSION

Title 18 U.S.C. Section 3500 requires that, following a government witness's testimony on direct examination, the government turn over to the defense "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18

U.S.C. § 3500(b). The test for determining whether a statement "relates to the subject matter" of the witness's testimony, and is therefore producible as 3500 Material, is that "[t]he statement must relate *generally* to the events and activities testified to." *United States v. Cardillo et al.*, 316 F.2d 606, 615 (2d Cir. 1963) (emphasis added); *see also United States v. Bin Laden et al.*, 397 F. Supp. 2d 465, 492 (S.D.N.Y. 2005). The Second Circuit interpretation of what "relates to" a witness's testimony is broad. *See Bin Laden*, 397 F. Supp. 2d at 493. It includes not only statements that relate to the witness's factual narrative, "but also to impeachment of [the witness's] direct testimony by showing bias and interest." *United States v. James et al.*, 609 F.2d 36, 48-49 (2d Cir. 1979); *see also United States v. Birnbaum*, 337 F.2d 490, 497-98 (2d Cir. 1964) (noting that "it seems plain that the witness need not have testified on direct to the specific conversation or document" in order for a witness statement to fall within the purview of Section 3500); *Bin Laden*, F. Supp. 2d at 493 (quoting *James*). However, "not all statements that might in some way be helpful in impeaching the witness are producible." *Birnbaum*, 337 F.2d at 498; *see also Bin Laden*, F. Supp. 2d at 493 ("Though this interpretation of 'relate to' is broad, it is not without limits."). The particular facts of the case must control the determination whether a statement is producible as 3500

7

Material.  *Birnbaum*, 337 F.2d at 498; *see also Bin Laden*, F. Supp. 2d at 493.

The government here argues that certain documents relating to the seizure of the second cocaine shipment on June 21, 2009 and the four other individuals arrested at JFK on June 21, 2009 in connection with the cocaine shipments are not producible as 3500 Material because they do not relate to defendant's charged conduct and are outside the scope of what the government witnesses will testify to at trial.  (Gov. *Ex Parte* Ltr. dated 10/27/10.)  Among these documents are the evidence vouchers and drug lab analysis report for the seizure of the second shipment of cocaine and the notes of interviews of the other four individuals arrested on June 21, 2009 in connection with the cocaine shipments.  (*Id.*)  The government additionally argues that the interview notes are not producible because the contents are inadmissible hearsay.  (*Id.*)

Based on a review of the documents and applying the standard in the Second Circuit for what material "relates to" a witness's statement, the court finds that the documents at issue here are producible as 3500 Material.  The withheld documents "relate to" the anticipated testimony of the government witnesses in this case, as described by the government in its October 26, 2010 letter.  According to the government, it will elicit testimony from witnesses at trial regarding "the seizure

of approximately 233 kilograms of [cocaine] on June 21, 2009."
(10/26/10 Ltr.)  Given this anticipated testimony, the evidence
vouchers documenting the seizure, vouchering, and safekeeping of
the second cocaine shipment, and the drug lab analysis report
documenting the fact that the seized shipment contained
approximately 233 kilograms of cocaine, both "relate to" that
testimony in that they "relate generally to the events and
activities" that the agents are expected to testify to, i.e. the
seizure on June 21, 2009 of a second shipment containing
cocaine.  *See Cardillo*, 316 F.2d at 615.  Further, because the
government intends to elicit testimony at trial about "the fact
that four other individuals were arrested and interviewed by
agents on June 21, 2009" (10/26/10 Ltr.), the notes of the
interviews of these other four individuals also "relate to" the
anticipated testimony and are producible under Section 3500.

        The government's argument that the interview notes are
not producible because they constitute inadmissible hearsay is
unavailing.  "The producibility of statements under [Title 18
U.S.C. Section 3500] and their admissibility under the rules of
evidence are separate questions."  *Campbell v. United States*,
373 U.S. 487, 493 n.7 (1963); *see also Palermo v. United States*,
360 U.S. 343, 354 (1959) ("The statute governs the production of
documents; it does not purport to affect or modify the rules of
evidence regarding admissibility and use of statements once

produced."). The court does not decide at this time whether any of these documents would be admissible at trial. The question now before the court is only whether the documents must be produced pursuant to Title 18 U.S.C. Section 3500. The court finds that, in light of the government's recent submissions regarding the anticipated testimony of government witnesses at trial, the documents are subject to production as 3500 Material. The government is directed to produce the 3500 Material to the defense and to file the October 27, 2010 *ex parte* letter to the court on the ECF docket by close of business on November 2, 2010.

/

/

/

/

/

/

/

/

/

/

/

/

/

**CONCLUSION**

For the reasons set forth above, Morel's motion for disclosure of further 3500 Material is granted. The government is directed to produce the 3500 Material relating to the second seizure of approximately 233 kilograms of cocaine on June 21, 2009 and the arrests of four other individuals at JFK on June 21, 2009 in connection with the cocaine shipments. The government must also file the October 27, 2010 *ex parte* letter to the court on the ECF docket.

**SO ORDERED.**

Dated: November 1, 2010
      Brooklyn, New York

                                              /s/
                                     KIYO A. MATSUMOTO
                                     United States District Judge
                                     Eastern District of New York